**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X Appeal 1:19-cv-02846-PKC
Elvis Mata

                Debtor-Appellant.
v.

Arvest Central Mortgage Corporation,

                Creditor-Appellee.
------------------------------------------------------------X

# <u>Elvis Mata Appellant Brief</u>

Dahiya Law Offices, LLC
Karamvir Dahiya
75 Maiden Lane Suite 506
New York NY 10038
Tel: 212 766 8000
karam@dahiya.law

# Table of Contents

Page No.

Background…………………………………………………………………….1

Jurisdictional Statement……………………………………………...6

Standard of Review……………………………………...……6

Issues Presented………………………………………………...6

Arguments…………………………………………………...7

## Cases and Statutes

*Bender* v. *Williamsport Area Sch. Dist.*,
          475 U.S. 534  (1986)……………………………………........……8

*Bender v. Williamsport Area Sch*. Dist.
          475 U.S. 534 (1986)……………………………………….…10

*Bennett v. Spear*
          520 U.S. 154 (1997)…………………………………………...11

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,*
          556 U.S. 635 (2009)………………………………………….8

*Comcoach Corp.*
          698 F.2d 571(2d Cir. 1983)………………………………………..10

*Denton v. Hyman (In re Hyman)*
          502 F.3d 61, 65 (2d Cir.2007)…………………………..……….....6

*Douglas v. Kohart*
          196 A.D. 84, 187 N.Y.S. 102 (2d Dep't 1921)………………………….. 9

*Flushing Savings Bank v. CCN Realty Corp.*
          73 A.D.2d 945, 424 N.Y.S.2d 27 (2d Dep't 1980) ………………………...9

*G.B. Seely's Son, Inc. v. Fulton-Edison, Inc.*
    52 A.D.2d 575, 382 N.Y.S.2d 516 (2d Dep't 1976)………….……… 9

*Home Life Insurance Co. v. O'Sullivan*
    151 A.D. 535, 136 N.Y.S. 105 (2d Dep't 1912)……………………... 9

*Lujan v. Defenders of Wildlife*
    504 U.S. 555, 560 (1992)……………………………...………8, 11

*Muskrat v. United States*
    219 U.S. 346  (1911)………………………………..……………11

*Preiser v. Newkirk*
    422 U.S. 395 (1975)…………………………………………..11

*Simon v. Eastern Ky. Welfare Rights Organization*
    426 U.S. 26 (1976)……………………………...……………9

*Steel Co. v. Citizens for a Better Env't.*
    523 U.S. 83 (1998)……………………..…………...8, 10

*Whitmore v. Arkansas*
    *495 U.S. 149* (1990)……………………………..………...8

*United States v. Hays*
    515 U.S. 737 (1995)……………………………...………10

*United States v. Morton*
    467 U.S. 822, 828 (1984)…………………………...……..8

28 U.S.C. §157…………………………………..……………………..7

28 U.S.C.§ 158…………………………………………………………7

28 U.S.C. § 1334(a)…………………………………………………7, 9

11 U.S.C. §362……………………………………………………6, 7

**Background**

1,      The Appellant Elvis Mata (Mata or Appellant) is a victim of fraud and deception. The fraud was perpetrated by eleven individuals and two corporations (the "Gang" or "Kings Development Group"). All indicted. Mata App-035 to 38. Because of the Gang's fraudulent bankruptcy filings, the Court granted *in rem* relief stay to the creditor, Arvest Central Mortgage Company (Arvest or Appellee) under the impression that such bankruptcy filings were done by Mata. Irrespective of the impression, the bankruptcy court granted an *in rem* relief to the Appellee without subject matter jurisdiction, or finding any standing with the appellee to seek such a relief. Mata App-173.  The issue before this Court is very simple, if the bankruptcy court had the subject matter jurisdiction and if the appellee had requisite article III standing to seek the relief they sought in the particular case and thus rendering the last and the only bankruptcy filing, App-175, by the appellant as ineffectual.

2.      Mata fell behind in his mortgage payments regarding his home, 3733 97th Street, Corona, New York 1136 (Home). He received phone calls from a lady, Jasmine Fernandez offering to help him. He went to her office. She was a marketing employee for the Kings Development Group, who sold their expertise as resolving mortgage debt issues. Kings Development Group was rather a criminal enterprise that preyed on vulnerable home buyers, who were tricked into giving up their home deeds to the enterprise's different entities. There were some

attorneys involved with this enterprise.  Mata became a victim of foreclosure rescue scams.[1]

3.      Ms. Fernandez introduced Mata to Assaf Moshe a.k.a. Joe Levi (Moshe), who spoke a little versed in Spanish language—versed enough to induce Mata to sign the deed transfer paperwork prepared in English language. Mata App-039 to 047.  Moshe assured Mata, that his house is safe now and they will take care of everything.

4.      Mata home is a two-family house. A few days after the signing of the paperwork, Mata was contacted by Ms. Fernandez and was told that they will haves

---

[1] Foreclosure rescue scams [not schemes] are various types of schemes targeted at homeowners already facing foreclosure and in financial distress. When homeowners have significant equity in their homes or when property values are appreciating, foreclosure rescue scams often focus on obtaining title to the home and robbing homeowners of their equity. This is that case. See generally Lawyers' Comm. for Civil Rights Under Law, Foreclosure Rescue,Inc. (2014), available at http://lawyerscommittee.org; Lauren Saunders, Andrew Pizor, & Tara Twomey, National Consumer Law Center, Desperate Homeowners: Loan Mod Scammers Step In When Loan Services Refuse to Provide Relief (July 2009), available atwww.nclc.org; Steve Tripoli & Elizabeth Renuart, National Consumer Law Center, Dreams Foreclosed: The Rampant Theft of Americans' Homes Through Equity-Stripping Foreclosure "Rescue" Scams (June 2005), available at www.nclc.org. See also Gov't Accountability Office, Federal Efforts to Combat Foreclosure Rescue Schemes Are Under Way, But Improved Planning Elements Could Enhance Progress, GAO-10-787, at 7–10 (July 2010) (describing scams), available at www.gao.gov.

    The ethnic homeowners are the vulnerable targets of such scamsters. Lawyers' Committee for Civil Rights Under Law, A Practical Guide for Identifying, Investigating, and Bringing Suit Against Consumer Financial Scams: Lessons Learned and Tips Developed From Combatting Loan Modification Scams at 7 (approx. Dec. 2015) (describing efforts of *scammers to focus on certain ethnic or language communities*). See Press Release, N.C. Dep't of Justice, AG Cooper Shuts Down Foreclosure Fraudsters (Aug. 23, 2006), available at www.ncdoj.gov. See, e.g., Stephanie Saul, N.Y. Times, Real Estate Shell Companies Scheme to Defraud Owners Out of Their Homes (Nov. 7, 2015), available at www.nytimes.com.

to pick up the rent from the property as they had to pay property taxes and mortgage, as well as clearing up the violations attached to the property. Soon thereafter Mata started receiving mail at his residence not in his name, he panicked. He went to the Department of Environmental Protection and discovered that the property was not his name anymore rather it has been transferred. He contacted Kings Development, they told him that they were the owners. Mata went to talked to police and other federal bureaus about the loss of his house. Also, around same time, Kings team led by one Nissan Pinchasov came to his house to forcibly evict him from his home, however Mata holding a machete in his hand defended himself and the gang retreated.   After having gone through several incidents of physical and eviction threats, Mata got in touch with the Queens District Attorney office.   There was an investigation already pending around the same against the Gang.   They were finally arrested in March of 2017. There were proceedings brought by the district attorney office and Mata finally had his deed back in June of 2018.    However, a lot of damage was already done by that time.

5.      Moshe had Mata transfer the deed to his house to a company that was especially incorporated this purpose, 97 Street Realty Inc. (97 Street).   Mata App-048    At that time, Mata's home was already in foreclosure proceeding. 97 Street was incorporated only for the purposes of the holding the deed to Mata's home. Since the house was being foreclosed and rental stream to the criminal enterprise would have snapped, on August 5, 2016, the Gang put 97 Street into a chapter 11 bankruptcy proceeding solely to obtain an automatic stay. Mata App—050.   Mata

did not have any knowledge of such a filing. The Pacer reflects that the case was filed as pro se and dismissed on September 6, 2016. Mata App--072

6.    On the same date, August 5, 2016, the Gang forged Mata signature and filed a personal chapter 13 bankruptcy with the bankruptcy court, eastern district of New York. App-  This case was dismissed on September 20 2016.  Mata App—075. Because of the aforesaid filing the auction date pending in the state court was adjourned.

7.    Meanwhile Mata runs from one place to another to save his home from being foreclosed. He seeks help from various people and also tries loan modification etc. but since he did not own the property, he could not accomplish anything. He met some real estate brokers who asked for exclusive listing on his behalf to sell the property to prevent any foreclosure, but once it was discovered that the property was not in his name, they met the same fate.

8.    Around July 13, 2017, there is another chapter 13 bankruptcy filed in Mata's name [second]. App- 093.  It was again a pro se filing with no proper documentation etc. On October 09, 2017, this case was dismissed with prejudice by the bankruptcy court. App—110.

9.    On November 27, 2017, there is a third bankruptcy under Chapter 7, filed in Mata's name. App-113.    This case too was dismissed for lack of prosecution on January 17, 2018.  App-140.   Mata had no knowledge about these filings, and he was not told about his obligation or regarding any meeting of creditors.

10.    On March 16, 2018, there was yet another filing under chapter 11 by one purported corporation 3733 97 St. Corona Corp. (Corona Corp), purporting to be

4

operating from Mata's home (case no. 18-41466). App-161.  Mata was shown as

the president.  App-164.   It was dismissed on June 1, 2018.

11.     On September 7, 2018, yet another bankruptcy is filed under chapter 13 in

Mata name. App-144.  This case dismissed too on October 23, 2018.  App—159.

12.     Mata did not have the knowledge or information about these filings and

nor was he told about such a filing.  Mata was a victim and continued to be so

until the receipt of his deed pursuant to the orders of Hon. Daniel Lewis,

transferring the deed back to Mata in  and around June 2018. Mata App—186.

Mata came to know about the deed transfer late in the year 2018.

13.     Mata once in possession of his home deed came to the undersigned for

help with the reinstatement of the mortgage and payment plan. A chapter 13

bankruptcy was filed on February 5, 2019.  App—175.   Promptly a motion to

reimpose stay was filed and only those cases in his name were recounted as

previous filing. The undersigned knowledge of these previous filing was pacer,

Mata had no knowledge of other corporate filings. However, since the Mata did

not have the knowledge of the corporate bankruptcy filing, and the undersigned

could not have known immediately from pacer, there was no mention and

research of the 3733 97 St. Corona Corp. filing.   It was only after the last

personal chapter 13 bankruptcy, once the bank responded, did it come to the

knowledge of the undersigned that the creditor Arvest Central Mortgage

Company (Arvest) had obtained an *inrem* stay relief. App—173.

14.     Once this *in rem relief* was brought to the undersigned knowledge, we

moved to supplement our motion to reimpose stay and added a request to void the

5

*in rem* relief grant. Mata App-024.  A plea was taken that the stay relief granted in the Corona Corp. case was void as it was granted without any basis or jurisdiction. *First* Corona Corp did not have the property deed or any ownership claims. *Second*, Arvest lacked standing. *Third,* filing of by Corona Corp. did not result in stay, thus there was a lack of controversy and rendered the in rem stay relief as advisory and speculative. *Fourth,* Mata was a victim of fraud and criminal enterprise. And *fifth*, Mata had not filed the previous bankruptcy cases, thus why would Mata be penalized with the sanctions of a repeat filer.   The bankruptcy court did not find merit in Mata's contention.  Clearly the Court acted without jurisdiction. The case was dismissed as there was no deemed stay.

### Jurisdictional Statement

15.     The district courts have original and exclusive jurisdiction over all bankruptcy "cases." 28 U.S.C. § 1334(a). Cases are referred to the bankruptcy court pursuant to 28 U.S.C. §157 (a) and then they are rerouted back to the district court for appellate review under 28 U.S.C.§ 158. This appeal is "from the final judgment" of the bankruptcy court.

### Standard of Review

16.     This Court reviews the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. See *Denton v. Hyman (In re Hyman),* 502 F.3d 61, 65 (2d Cir.2007)

### Issues Presented

i. Did the Bankruptcy Court err in granting denying the debtor's motion to reimpose stay pursuant to section 362?

ii. Did the Bankruptcy Court erred in not vacating its order granting in rem relief, pursuant to section 362(d)(4) of the Bankruptcy Code?

6

iii. Did the Bankruptcy Court exceeded its jurisdiction in granting in relief pursuant to section 362(d)(4) of the Bankruptcy Code?

iv. Did, the appellee Arvest Central Mortgage Company have any standing to seek relief under 362(d)(4) of the Bankruptcy Code against an entity lacking any relationship with the appellee or the underlying mortgage?

**Arguments**

17.    The Court did not have jurisdiction to grant *in rem* relief in Corona Corp case. Mata did not file the repeat bankruptcy filings. He also did not file the Corona Corp. bankruptcy. Even if the bankruptcy is deemed filing, there was no stay against the Arvest Central Mortgage. Arvest was free to move against the debtor and against Mata's home. For Corona Corp did not have any property ownership in Mata's home. If the bankruptcy stay was not operable against Arvest, Arvest lacked any reasons to obtain in rem relief from the bankruptcy court. Bankruptcy court did not have jurisdiction over Mata's home in Corona Corp filing.

18.    Section 1334(e) states that "the district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—**(1)** of all the property, wherever located, of the debtor as of the commencement of such case, and   of property of   the   estate   .   .   .   ." 28   U.S.C.   §   1334(e). Section 541(a)(1) of the Bankruptcy Code provides    the    bankruptcy    estate established at the commencement of the case to include "all legal or equitable interests of the debtor in property...." 11 U.S.C. § 541(a)(1). Here, Corona Corp. did not have any ownership interest in Mata's home. Neither the security interest

7

nor the mortgage obligation had privity any privity between Arvest and Corona Corp.

19.     Arvest in its motion for in rem relief talked about several filings. Mata App-187.  Yet it had absolutely nothing to do with the Corona Corp. bankruptcy.  Since the property was not property of the estate, the Court granted relief in Corona Corp about a property what was not property of the estate.

> "Subject matter jurisdiction defines the court's authority to hear a given type of case," *United States v. Morton*, 467 U.S. 822, 828 (1984); it represents "the *extent* to which a court can rule on the conduct of persons or the status of things," Black's Law Dictionary 870 (8th ed.2004).

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639, (2009). Thus, "courts' statutory or constitutional power to adjudicate the case, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), being absent, the bankruptcy court should not have granted the stay relief.  Arvest also did not have a standing to bring a motion to lift the stay regarding this property in the Corporate Case. For there was no privity with the *in-rem* estate and or *in personamwise* with the debtor. Because Arvest lack of standing is considered a defect in a court's subject matter jurisdiction, see, e.g., *Bender* v. *Williamsport Area Sch. Dist*., 475 U.S. 534, 541-42 (1986).

20.     Arvest did not have the standing to seek the relief it sought. "The irreducible constitutional minimum of standing contains three requirements." Steel Co. at 102–04 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (inner quotation marks omitted). All must be satisfied. The creditor did not meet any of them. "First and foremost, there must be alleged (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.' Steel quoting *Whitmore v*. *Arkansas*, *495 U.S. 149* (1990). There was

8

no harm suffered by Arvest by any conduct of the Corona Corp. debtor. "Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel* quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976). Here there was nothing done by the Corona Corp. Causation chain was missing. "And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury*." Steel* quoting *Simon* at 45–46. "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel*. Arvest failed on all the foregoing fronts and this Court exercised jurisdiction despite Arvest lack of standing and or its own lack of being a custodian of the estate, 28 U.S.C.§ 1334.

21.     The issue confronted in this case has already been resolved by our circuit in 1983.

> The Bank further expresses concern that if it is not a "party in interest" entitled to seek modification of the stay, it will be barred from continuing its foreclosure action in state court and left without a remedy to enforce its rights under the mortgage. As noted by both lower courts these concerns are premised upon an erroneous view of the law. First, the state foreclosure action, as presently constituted, is not stayed. Until the debtor is named as a party-defendant the action does not affect the bankrupt estate. New York law provides that lessees are necessary parties in foreclosure actions. See *Flushing Savings Bank v. CCN Realty Corp.*, 73 A.D.2d 945, 424 N.Y.S.2d 27 (2d Dep't 1980); *G.B. Seely's Son, Inc. v. Fulton-Edison, Inc.*, 52 A.D.2d 575, 576, 382 N.Y.S.2d 516 (2d Dep't 1976); N.Y. Real Prop. Acts. Law § 1311(1) (McKinney 1979). Necessary parties are not always indispensable parties, however, whose absence mandates dismissal of the action. See N.Y.Civ.Prac.Law § 1001(b) (McKinney 1976). The absence of a necessary party in a foreclosure action simply leaves such party's rights to the premises unaffected. See *Douglas v. Kohart,* 196 A.D. 84, 88, 187 N.Y.S. 102 (2d Dep't 1921); *Home Life Insurance Co. v. O'Sullivan*, 151 A.D. 535, 537, 136 N.Y.S. 105 (2d Dep't 1912). By failing to name Comcoach as a party-defendant in its foreclosure action, the Bank has left the debtor in exactly the same position as it was in prior to commencement of the suit. Since no interest of the

9

bankrupt estate has been affected, no automatic stay prohibiting the continuance of the state foreclosure action exists.

*In re Comcoach Corp.*, 698 F.2d 571, 574 (2d Cir. 1983).  Thus Arvest did not have a standing Corona Corp. case to ask for a relief from stay.  Constitutional standing (which is derived directly from the "case-or-controversy" requirement of Article III, Section 2, Clause 1) is an essential, unwaivable prerequisites to the exercise of federal judicial power. *United States v. Hays,* 515 U.S. 737, 742–43 (1995). Unless a party seeking to bring a suit in federal court demonstrates standing, the presumption is that the court lacks jurisdiction. *Bender v. Williamsport Area Sch*. Dist., 475 U.S. 534, 541 (1986). The bankruptcy court entertained a motion from Arvest, when Arvest lacked standing, thus its action in grant of in rem relief was void.  Addressing a standing question, the Supreme Court in *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998), explained that for a "court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for [that] court to act ultra vires." *Id.* at 101–02.  Because Arvest lacked standing in Corona Corp bankruptcy filing, it is a defect in a court's subject matter jurisdiction, *see, e.g.*, *Bender*, 475 U.S. at 541–42.

22.     Also, for similar reasons when the Court had only powers regarding the assets of the estate of Corona Corp., it could not have pronounced a decision regarding Mata or his home.  See 28 U.S.C. § 1334(e).  It is unclear, how the court could have made a connection with the estate and Arvest claim.  At its essence, bankruptcy court jurisdiction exists in cases "under" the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and those cases "arising under," "arising in," and "related to" title 11. 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a). Thus, a bankruptcy

10

court may hear and finally determine all core bankruptcy proceedings; the parties'
agreement is not needed. 28 U.S.C. § 157(b).). In non-core "related to" proceedings,
however, only the district court may enter final orders absent consent of the parties.
28 U.S.C. § 157(c).  However, all said exercise of jurisdiction is premised on either
a jurisdiction over the debtor or the estate. Here Arvest's debtor was Mata and not
Corona Corp and its security interest was Mata's home and not any asset of Corona
Corp.  Since there was no privity with the Corona Corp. bankruptcy case, the
decision by bankruptcy court more advisory and one without any adversarial stance.
E.g., *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) ("[A] federal court has [no]
power to render advisory opinions . . . ."); *Muskrat v. United States*, 219 U.S. 346,
360–61 (1911) (dismissing suit for lack of adversity). There was no harm caused to
Arvest by Corona Corp. filing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560
(1992).  In essence, Arvest did not suffer any  "particularized" "injury in fact" to a
"judicially cognizable interest," that the injury is "fairly traceable" to the actions of
the Corona Corp, and that the injury will "likely . . . be redressed by a favorable
decision." *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (quoting *Lujan v. Defenders
of Wildlife,* 504 U.S. 555, 560–61 (1992)).  Arvest and Corona Corp. were not
adverse. *Muskrat v. United States*, 219 U.S. 346, 360–61 (1911) (dismissing as
nonjusticiable a suit in which the United States had "no interest adverse to the
claimants"). Thus, the bankruptcy court decision granting in relief to Arvest in
Corona Corp. bankruptcy case is void ab initio.

23.     Also, the bankruptcy court failed to take into consideration that Mata is a
victim of fraud and that since he had not filed earlier bankruptcies, those filings

11

should  not have been used against him.  Also, the repeat filing moratorium or *in rem relief* should not have been granted. If it was granted as the court was not aware of the circumstances and background of such filings, once the court was apprised of the real facts, the court should have vacated its in rem relief as being improperly granted.

## Conclusion

Wherefore, it is respectfully prayed that the Court vacate the bankruptcy court order granting in rem relief from automatic stay in Corona Corp. filing as void, thus rendering any actions take pursuant to such an in rem relief as a nullity bearing no effect on the underlying filed case.

Dated:  August 26, 2019
New York NY 10038

*/s/karamvir dahiya*
_____
Karamvir Dahiya for Elvis Mata